652 F.Supp. 1044 (1987)
William C. TUESBURG, Plaintiff,
v.
U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendant.
No. 84-414C(2).
United States District Court, E.D. Missouri.
January 14, 1987.
*1045 Robert C. Ely, St. Louis, Mo., for plaintiff.
Thomas E. Dittmeier, U.S. Atty., Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court after trial to the Court for a decision on the merits. The Court adopts this entire memorandum as its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.
Plaintiff's complaint arises from a dispute in the context of his employment with the United States Department of Housing and Urban Development. This Court has previously dismissed plaintiff's Count I, and only Count II, alleging violations of the Privacy Act, 5 U.S.C. § 552a, remains. As an initial matter, the Court must rule on the admission of documents and a deposition which were filed as a supplement to pretrial on the day of trial. The documents are a series of letters dated January 5, 6, 7, and 17, 1983, from Earl A. Frey regarding specification of construction projects. These will be admitted as Defendant's Exhibit J. Defendant also sought the admission of deposition testimony of plaintiff in another proceeding. That deposition has not been made a part of the file in this case, and the Court will not admit the deposition in its entirety.
Plaintiff served as Chief of the Costs Branch in the HUD St. Louis area office. *1046 Plaintiff's job involved supervision of employees who reviewed the cost claims of contractors made in the course of construction of various types of structures in connection with HUD programs. Part of plaintiff's responsibility included review of the contractors' activities to determine if the construction costs comply with HUD regulations.
The evidence before the Court shows that plaintiff's difficulties with his superiors began as early as 1980 and continued until his departure. These differences largely centered around disagreements with superiors on the processing of paperwork required as a part of HUD oversight of construction projects. Plaintiff frequently notified the Office of Inspector General and the main office of HUD of improprieties on the part of the St. Louis area office and contractors. Although some of these reports were not substantiated, others were. Plaintiff's supervisors were aware of these disclosures to the Inspector General and disapproved.
Plaintiff's disagreements were not limited to his superiors. A contractor involved in HUD projects, Milton C. Goldenberg, felt that plaintiff was unfairly evaluating and reviewing Goldenberg's construction projects. Mr. Goldenberg discussed the matter with the manager of the St. Louis area office, Johnny Bullock, who told Goldenberg to put his complaint in writing. Goldenberg complied and set out his complaints in a letter dated June 22, 1981. On July 31, 1981, plaintiff was notified that he would be detailed from his position in the Costs Branch to a position in the Assisted Housing Branch. This detail lasted until July 27, 1982.
In response to Goldenberg's letter, an individual outside the St. Louis office, Norman Jurgens, was retained to investigate the allegations of Goldenberg's letter. Mr. Jurgens' letter of September 4, 1981, was critical of plaintiff and confirmed some of the allegations in Goldenberg's letter.
Plaintiff was given a "less than fully acceptable" performance rating on September 30, 1981, and on December 10, 1981, received a letter from James Singleton, one of plaintiff's supervisors, notifying plaintiff of Singleton's proposal to remove plaintiff from his position in the Costs Branch. The December 10, 1981, letter set out specific allegations of plaintiff's misconduct including misconduct relating to Mr. Goldenberg.
The Office of the Special Counsel of the Merit Systems Protection Board investigated plaintiff's allegations of prohibited personnel practices under 5 U.S.C. § 2302(b). The Special Counsel issued his letter dated February 22, 1983, stating that reasonable grounds existed to believe that plaintiff's performance rating, detail to the Assisted Housing Branch, and proposed removal were in retaliation for plaintiff's disclosures to the HUD central office and to the Inspector General. The Special Counsel also found that the charges of misconduct in the December 10, 1981, letter notifying plaintiff of the proposed removal were substantially unfounded. Subsequently, the Special Counsel settled the claim it pursued against plaintiff's superiors on plaintiff's behalf.
On March 10, 1983, Mr. Goldenberg renewed his previous complaint against plaintiff and sought further action by plaintiff's superiors. This letter generated a response similar to the first letter, and HUD investigated the complaint. Eric Schultz and Richard McMullin, HUD representatives from the regional office in Kansas City, visited the St. Louis office on April 12 and 13, 1983, to investigate Goldenberg's new allegations. The investigation resulted in a finding that the allegations in Goldenberg's second letter were not well founded, but this finding was not retained as part of plaintiff's personnel file.
Plaintiff's complaint alleges that the Privacy Act was violated in the context of the two investigations of plaintiff and in maintenance of files and disclosure of information. Specifically plaintiff's complaint alleges that the Privacy Act was violated by (1) the Jurgens investigation when plaintiff was not informed of the investigation, information was not collected directly from plaintiff, and the information prepared was *1047 inaccurate (¶ 4); (2) the Schultz and McMullin investigation by failure to inform plaintiff of the investigation or collect information to the greatest extent practicable from plaintiff and collecting inaccurate information (¶ 5); (3) failure of Jurgens, Schultz, McMullin and others to maintain accurate records (¶ 6); (4) by solicitation of inaccurate statements from developers, failure to inform plaintiff of this investigation and failure to collect the information directly from plaintiff, failing to inform the solicited developer of the authority for the solicitation, the purpose of the information and the effects on developer of not providing information and failing to give the developer a form setting out this information (¶¶ 7, 8); (5) maintaining files documenting plaintiff's exercise of first amendment rights (¶ 9.a); (6) by disclosing inaccurate records and reports to Norman Jurgens and others and failing to give adequate reports to the Inspector General regarding plaintiff's complaints of waste, fraud, and mismanagement (¶ 9.6).
Plaintiff's pretrial brief explains and broadens his assertions to include failure to include the Schultz report in plaintiff's file; failure to establish guidelines for conducting the investigation; failure to interview appropriate persons; disclosing the Goldenberg letter to Jurgens without plaintiff's consent. With regard to the Privacy Act claim on records of first amendment activities, plaintiff states that Jurgens asked improper questions but goes on to state that there was no violation of the Privacy Act.
The sections of the Privacy Act establishing rules of agency conduct provide in part,
(e) Agency requirements.Each agency that maintains a system of records shall 
(1) maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President;
(2) collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs;
(3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual
(A) the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;
(B) the principal purpose or purposes for which the information is intended to be used;
(C) the routine uses which may be made of the information, as published pursuant to paragraph 4(D) of this subsection; and
(D) the effects on him, if any, of not providing all or any part of the requested information;
....
(5) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;
(6) prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes;
(7) maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity;
(8) make reasonable efforts to serve notice on an individual when any *1048 record on such individual is made available to any person under compulsory legal process when such process becomes a matter of public record;
(9) establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and the penalties for noncompliance;
The sections of the Privacy Act creating a civil action for damages provides in part,
Whenever any agency
....
(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or
(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.
5 U.S.C. § 552a(g)(1)(C), (D).
(4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of 
(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
(B) the costs of the action together with reasonable attorney fees as determined by the court.
5 U.S.C. § 552a(g)(4).
A violation of the act alone is not sufficient to establish an action for damage. A plaintiff must show that the violation had an adverse impact on him and that the agency acted intentionally or willfully.
The causation element of the Privacy Act requires that the plaintiff show a causal connection between the violation of the Privacy Act and plaintiff's injuries. In cases such as the one before the Court where plaintiff's allegations constitute prohibited personnel practices the Court must carefully examine the evidence to ensure that the plaintiff really presents a Privacy Act claim and not an effort to litigate federal personnel decisions. Hubbard v. U.S. Environmental Protection, 809 F.2d 1 (D.C.Cir.1986).
In Hubbard, a federal job applicant brought an action for damages under the Privacy Act when his employment application was denied. Because Hubbard was a veteran, the employer prepared a "passover document" stating the reason for the denial. In upholding the dismissal of the Privacy Act claim the court emphasized that the alleged violation, the inaccuracies in the "passover document," did not cause the injury to plaintiff, the denial of his application. Id. at 9; see also Albright v. United States, 732 F.2d 181, 187-88 (D.C. Cir.1984) (reduction in classification rather than record of first amendment activity caused emotional distress).
Plaintiff's claim here has similar causation problems. While plaintiff offered evidence to show that his performance rating had been lowered, he had been detailed from his ordinary duties and he was transferred to Kansas City and subsequently to Louisiana, the Court finds that plaintiff has failed to establish that these damages were the result of a Privacy Act violation. That these personnel actions may have been in retaliation for protected activity does not automatically fit them *1049 within a Privacy Act action for damages. Plaintiff has failed to establish the requisite causal nexus between these elements of damage and a Privacy Act violation, and his claims as to these elements of damage must fail.
Plaintiff has also offered evidence to show that he suffered emotional distress as a result of the letter of dismissal and was forced to expend 160 hours to respond to inaccuracies in the letter. As to emotional distress, the Court finds that plaintiff has again confused the cause of the harm. Any emotional distress plaintiff may have suffered was caused by the decision proposing his removal and not by inaccuracies contained in the letter memorializing that decision.
As to the personal time spent responding to the alleged inaccuracies of the letter proposing the removal, the Court holds that review in this circumstance under the guise of the Privacy Act would involve review of federal employment practices properly considered by the elaborate agency system of review provided by statute. Judicial review of agency personnel decisions is limited to the exclusive jurisdiction of the United States Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a); see Bush v. Lucas, 462 U.S. 367, 386-87, 103 S.Ct. 2404, 2415-16, 76 L.Ed.2d 648 (1983).
In the instant case plaintiff argues that he was forced to respond to inaccuracies in the letter notifying him of the proposed removal and, therefore, suffered damage as a result of HUD's intentional failure to prepare and maintain accurate records. While the causation argument is plausible here, these damages would be inseparable from the claim that plaintiff's supervisor committed prohibited personnel practices. Consideration of this claim would involve the Court in review of agency personnel decisions thereby circumventing the elaborate statutory review scheme provided for exclusive judicial review in the United States Court of Appeals for the Federal Circuit. See Hubbard, 809 F.2d at 5.
Plaintiff's Privacy Act claims are, therefore, without merit and judgment in favor of defendant will be entered in accordance with this memorandum.

JUDGMENT
In accordance with the Memorandum filed this day and incorporated herein as to Count II of plaintiff's complaint and the memorandum and order of April 1, 1985, granting defendant's motion for summary judgment as to Count I,
IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant shall have judgment against plaintiff on Counts I and II of plaintiff's complaint and that plaintiff's complaint is DISMISSED with prejudice. Plaintiff shall pay the costs of this action.